IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JEREMY ROEHR,<br><br>Defendant. | CR 18–86–BLG–DLC<br><br>ORDER |

Before the Court is Defendant Jeremy Roehr's Motion to Suppress. (Doc. 16.) The motion is granted in part, and the evidence found pursuant to a search of a black backpack discovered during an unconsented-to warrantless search of a third party's residence is suppressed. The motion is denied as to the evidence found during the course of searching Roehr's vehicle.

### FACTUAL BACKGROUND

The State of Montana issued a warrant for the arrest of Defendant Jeremy Roehr prior to August 25, 2017. On that date, law enforcement officers fielded a phone call stating that Roehr could be found at a trailer in Lockwood, Montana and that Roehr's car, a black Nissan Sentra, was parked outside the trailer. (Doc. 18 at

2.) Allena Junkert owned the trailer, and she lived there with her adult daughter, Krista Junkert.

Approximately six law enforcement offers effected Roehr's arrest on August 25 at the Junkerts' residence. (Doc. 17-1 at 1.) After taking Roehr into custody, officers searched Roehr's car, where they found cash, plastic baggies, and a small digital scale and weights. (Doc. 17-1.) Officers also searched a black backpack, which they had found in Krista Junkert's bedroom, located in the back section of the trailer. Inside the backpack, searching officers found illegal drugs and cash. (Doc. 17–1.)

Beyond these few facts, the details are somewhat murky. Here, there are six different stories of the event told by four different participants over the course of two documents and three evidentiary hearings.[1] Given the disparities between these accounts, the Court briefly summarizes each rather than attempting a synthesis.

### 1. Evans's report

Officer Chris Evans, Roehr's state probation officer, was present for the search of the Lockwood trailer home. Following Roehr's arrest and the search of

---

[1] Although subpoenaed, witnesses Allena and Krista Junkert did not appear for the initial hearing. It was continued twice to enable the Court to hear their testimony.

Roehr's vehicle and the black backpack, Evans typed and signed his statement. (Doc. 17-1.)

Evans wrote that, following five minutes of knocking, Krista Junkert answered the door of the trailer, which opens into the living room of the residence. Although she was initially evasive and dishonest regarding Roehr's whereabouts, Junkert eventually told Officer Jayson Baxter, "you can come in and look." The officers ultimately found Roehr in the back bedroom of the trailer, and they called him into the living room, where he was placed in restraints. At this time, officers summoned Allena Junkert, who had thus far remained in her bedroom, into the living room.

According to Evans's written account, Evans asked Krista for the keys to Roehr's car. He walked with her to the back bedroom, "where Roehr had been located," and she gave him the keys on a lanyard. Evans then asked Krista "who the backpack in the room belonged to. She confirmed it was Roehr's and stated, 'you can take it.'" (Doc. 17–1 at 2.) Evans verified with Roehr that the backpack was Roehr's and began to search the bag. Upon finding cash and what appeared to be illegal drugs, Evans consulted with other law enforcement officers in person and over the phone, and the officers determined that the City County Special

Investigations Unit would apply for a warrant before the bag was searched further. Officers than proceeded to search the car, where additional contraband was found.

### 2. Evans's testimony

Evans testified at the first hearing on the motion to suppress, held October 9, 2018. He stated that Krista answered the door following a prolonged period of knocking, stepped to the side of the threshold, and invited the officers to come inside to look for Roehr. Evans testified that Roehr appeared in the living room within seconds of the officers' entry, just after an officer called for him down the hallway. Evans was not sure what room Roehr had been in when the officers entered the residence. Roehr was arrested and taken outside.

After asking Krista where he could find Roehr's car keys, Evans accompanied Krista to her bedroom, where he saw the black backpack near the keys. He asked Krista to whom it belonged, and she said it was Roehr's. Evans then asked if Krista would like to keep the backpack in the trailer while the officers took Roehr into custody. Krista replied that she preferred for the officers to take the bag with them, saying, "You can take it."

Evans confirmed with Roehr that the backpack belonged to him and initiated a probationary search. Upon finding what appeared to be evidence of a new crime, Evans and his fellow officers reached out to the City County Special Investigations

Unit, which asked that the officers turn the bag over to the unit so that the unit could then apply for a search warrant. The officers proceeded to search Roehr's car.

### 3. Baxter's report

Officer Jayson Baxter of the Montana Violent Offender Task Force was also present for Roehr's arrest and the ensuing search of the car and backpack. Like Officer Evans, Baxter completed a report on August 25. (Doc. 18.) He wrote that Krista Junkert answered the door after five minutes of knocking. While the door was open, another officer on the scene, Steve Swanson, caught a glimpse of Roehr entering the living room. Swanson then entered the trailer, "after seeing Roehr enter the living room," and Roehr was arrested, restrained, and moved outside. Allena Junkert was summoned from her bedroom into the living room.

Baxter wrote that officers asked Krista Junkert "what item[s] belonged to Roehr." (Doc. 18 at 3.) He waited in the living room while other officers went to the back bedroom, returning with a black backpack. Following a probationary search of the backpack, drug paraphernalia and cash were seized. Officers went on to perform a probationary search of the car, where additional contraband was found and seized.

### 4. Baxter's testimony

Baxter testified at the same hearing as Evans, on October 9, 2018. He described knocking and announcing at the Lockwood trailer on August 25. After a few minutes, Krista opened the door, and officers entered the trailer as she stepped back. She did not verbally invite the officers inside.

The officers asked about Roehr, and Krista was initially hesitant to give any information, but she ultimately told them that they could look inside for Roehr. Only after this discussion, which lasted about thirty seconds, did Officer Swanson see Roehr in the hallway and begin walking toward him, calling his name. Roehr did not try to escape but instead walked into the living room, where he was arrested before being taken outside. Allena Junkert was called into the living room.

Baxter heard part of a discussion between Evans and Krista about the location of Roehr's keys and other belongings, but he couldn't remember the details. Baxter was outside when Evans walked out of the trailer with the black backpack. Evans asked Roehr if the backpack was his, and Roehr stated that it was. Evans proceeded to search the backpack, and then officers searched the car.

### 5. Allena Junkert's testimony

Allena Junkert, mother of Krista Junkert and owner of the Lockwood trailer home, testified pursuant to subpoena on November 13, 2018, at the first

-6-

continuation of the hearing. Allena stated that she was in her bedroom, located near the front of the trailer, when she heard banging on the door and the name of her daughter, Krista, being called. Frightened and unsure of who was at the door, Allena hid in her bedroom until she was called into the living room a few minutes later. Allena did not see or hear anything regarding how the officers entered the residence. She remembers seeing Krista walking out of the bedroom with the keys to Roehr's car, but she did not see or hear anything regarding the backpack.

### 6. Krista Junkert's testimony

Krista Junkert testified at the second continuation of the hearing, held on November 20, 2018. She stated that she and Roehr were sleeping in her bedroom when her mother woke her. She didn't hear any knocking or shouting, but she did hear a scraping sound outside the trailer. When she opened the front door to investigate, she found a group of law enforcement officers standing in the doorway with the screen door already open. Three officers stepped into the trailer, pushing Krista aside on their way in. She did not invite them inside because she knew that the officers were looking for Roehr and she wanted to protect him.

Krista initially told the officers that Roehr was not in the trailer. She couldn't see that Roehr was already in the officers' view. Roehr was standing behind Krista in the kitchen, which is adjacent to and visible from the trailer's

-7-

living room. One of the officers called to Roehr, asking him to come forward, and Roehr complied with the request. He was arrested and taken outside. Allena was summoned, and she joined the officers and Krista in the living room.

The officer who took Roehr outside came back into the trailer shortly after effecting the arrest, looking for the keys to Roehr's vehicle. Krista walked back to her bedroom, with two officers trailing her, where she unclipped Roehr's keys from a black backpack and handed them to one of the officers. The officer asked for the backpack, and Krista told him that the bag was not Roehr's. The officers threatened to bring a canine unit into the trailer if Krista did not give them the backpack. Although Krista never represented that the backpack was Roehr's, and she did not authorize the search or seizure of the bag, one of the officers took the backpack.

## LEGAL STANDARD

Warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Accordingly, "the government bears the burden of showing that a warrantless search . . . falls within an exception to the Fourth Amendment's warrant requirement." *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012). The government must meet its

burden by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974).

## DISCUSSION

Roehr does not contend that his arrest was unconstitutional. Instead, he argues that the warrantless searches of (1) the black backpack and (2) his vehicle violated his Fourth Amendment rights because neither search falls within an exception to the warrant requirement. The government argues that it did not need a warrant to search the backpack and the car for two reasons: (1) law enforcement had probable cause to believe Roehr resided at the trailer and accordingly the search was conducted according to Roehr's conditions of parole; and (2) Krista Junkert gave consent to search the trailer.

Although the issue of standing went unbriefed by the parties, the Court notes that under Ninth Circuit precedent, Roehr has standing to challenge the search of the Junkerts' residence because of his "status as an overnight guest." *United States v. Grandberry*, 730 F.3d 968, 974 (9th Cir. 2013) (quoting *Minnesota v. Olson*, 495 U.S. 91, 96 (1990)).[2] While it may be somewhat bizarre that a probationer "ha[s] a greater expectation of privacy in someone else's home than [he has] in

---

[2] *Grandberry* contradicts the government's claim that "[t]he requirement that officers have probable cause to believe that a probationer resides at a specific address protects the interests of third parties, not probationers." (Doc. 20 at 9.)

-9-

[his] own home," *id.* at 983 (Watford, J., concurring), a probationer may challenge the warrantless search of a third party's residence on the ground that law enforcement lacked probable cause to believe the probationer resided at the home, so long as the probationer establishes a legitimate expectation of privacy in the home, *id.* at 973–75.[3] Here, the government does not dispute that Roehr was an overnight guest at the Junkerts' home—and, indeed, argues that Roehr resided at the home, if unsuccessfully. *See infra* p. 12. Thus, Roehr has standing to challenge the search. *See Grandberry*, 730 F.3d at 974.

## I. Probationary Search

The government argues that Roehr's backpack and car were searched in accordance with the terms of his supervision. (Doc. 20 at 6–10.) Roehr does not argue that law enforcement unreasonably concluded that he was in violation of his probationary conditions, and he agrees that he gave consent to search his residence and person pursuant to those conditions. However, he argues that the search of the Junkerts' residence fell outside the terms of his supervision. The Court agrees as to the backpack but not as to Roehr's car.

---

[3] Although *Grandberry* addresses the Fourth Amendment rights of parolees, rather than probationers, and these rights are not coextensive, *King*, 687 F.3d 1189, *Grandberry* nonetheless applies because a probationer, such as Roehr, has a greater expectation of privacy than does a parolee, *Samson v. California*, 547 U.S. 843, 850 (2006).

As a condition of conditional release, Roehr agreed that "[u]pon reasonable suspicion, . . . my person, vehicle and/or residence may be searched . . . without a warrant." (Doc. 20-1 at 2.) Setting aside whether he could have done so, Roehr did not consent to the search of every residence in which he may be found. Here, the backpack was located during a search of the Junkerts' residence. Unless the searching officers had probable cause to believe that Roehr resided in the Lockwood trailer, that search does not fall within the scope of Roehr's probationary search condition.

An officer with an arrest warrant has the right to enter the defendant's own residence if she has "reason to believe" the defendant is inside, *Payton v. New York*, 445 U.S. 573, 603 (1980), and "reason to believe" has been defined by the Ninth Circuit as equivalent to probable cause, *United States v. Gorman*, 314 F.3d 1105, 1111 (9th Cir. 2002). However, "[i]f the police lack probable cause to believe the suspect is an actual resident, but have probable cause to believe he's present, they must get a search warrant." *United States v. Harper*, 928 F.2d 894, 896 (9th Cir. 1991), *overruled in part on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012) (en banc) (per curium). "[T]he parole condition indicates only the parolee's acquiescence to a warrantless search of his own residence. Absent this provision and the existence of exigent circumstances,

-11-

officers must obtain consent or a warrant to enter a house." *Motley v. Parks*, 432 F.3d 1072, 1079 (9th Cir. 2005), *overruled in part on other grounds by King*, 687 F.3d 1189.

Although the government briefed the issue of residency, its argument is clearly foreclosed by the testimony presented by Officers Evans and Baxter, both of whom admitted that they had no reason to believe that Roehr resided with the Junkerts. At the time of the arrest, the only evidence possibly supporting a determination of residency was: (1) a phone call from an unknown, probably male, caller, who stated that Roehr was staying at the Lockwood trailer and identified Roehr's car; and (2) the officers' verification that Roehr's car was parked outside the trailer. The government has not met its burden of demonstrating that officers had probable cause to believe that the trailer was in fact Roehr's residence. *See Harper*, 928 F.2d at 896.

However, the analysis differs as to Roehr's vehicle, which was discovered independent from the search of the Junkerts' residence. Roehr had no expectation of privacy in the Nissan Sentra. Roehr's consent to search pursuant to the terms of his supervision clearly extends to his car, (Doc. 20-1 at 2), and the probationary search of the vehicle therefore did not violate Roehr's Fourth Amendment rights.

*See United States v. Knights*, 534 U.S. 112 (2001) (holding investigatory search of probationer constitutional when authorized by conditions of probation).

Roehr nonetheless contends that officers illegally seized the keys to the vehicle as part of the unwarranted and unconsented-to search of the Junkert's residence. The Court disagrees that the illegality of the search of the trailer, discussed below, necessarily translates to suppression of evidence found in the vehicle. Even if the officers did not have legal access to the keys, any evidence located in the car is not suppressible as fruit of the poisonous tree. Prior to the search, the officers confirmed that the car was registered to Roehr, and Roehr cannot reasonably argue that the officers did not have the right to search the vehicle pursuant to the terms of his supervision. Even if they had not gotten the keys, "by following routine procedures, the police would inevitably have uncovered the evidence." *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1399 (9th Cir. 1989).

## II. Consent

The government argues that even if the officers could not conduct a probationary search of the backpack, Krista Junkert gave consent to the search and that the search therefore fell within an exception to the warrant requirement. By leaving the bag in the Junkerts' residence, Roehr "voluntarily . . . relinquished

-13-

some of his expectation of privacy by sharing access or control over his property" with Allena and Krista. *Illinois v. Rodriguez*, 497 U.S. 177, 194 (1990). Accordingly, if Krista gave consent to the search of the residence, where the officers found the bag, Roehr is not entitled to suppression. *See United States v. Bolivar*, 670 F.3d 1091, 1096 (9th Cir. 2012) ("Once police officers properly enter a residence pursuant to a probation search, they need only a 'reasonable suspicion' to conclude that the probationer owns, controls, or possesses a particular item within the probationer's residence in order to conduct a search.") On the other hand, because there was no valid probationary search of the trailer, *supra* pp. 10–13, suppression is justified if Krista did not give consent to search.

"When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). "The existence of consent to a search is not lightly to be inferred . . . ." *United States v. Reid*, 226 F.3d 1020, 1025 (9th Cir. 2000). The government has not met its burden in this instance.

At the final hearing on the motion to suppress, the government argued that the Court's decision comes down to the credibility of the witnesses and that the testimony of law enforcement officers is more credible than that of a drug user

-14-

who had a sexual relationship with the defendant. While the government is correct that credibility is relevant to the Court's factual determinations, the Court rejects the government's black-and-white framing of the issue. The issue does not boil down to who is more trustworthy between law enforcement officers and the witnesses for the defense. The issue is whether the government met its burden of demonstrating that an exception to the warrant requirement exists, and credibility is significant only to the degree that it affects the Court's determination of that issue.

In light of the disparate accounts given not only between law enforcement and lay witnesses but between the law enforcement officers themselves, the Court cannot find that the government has, in fact, met its burden. Of primary significance is the fact that the government's two witnesses, law enforcement officers present on the scene, did not present a cohesive recollection of events. Indeed, each officer's testimony differed in part from his own police report regarding the circumstances under which the officers entered the residence. Setting aside the testimony of the defense witnesses and viewing only the evidence presented on behalf of the government, there is no clear story of how the officers initially entered the trailer. There was consent only if Krista expressly or

implicitly invited the officers in, and the Court cannot conclude that a preponderance of the evidence supports such a finding.

What is more, a primary reason given by the government to discredit Krista's testimony—Krista's interest in protecting Roehr—in fact weighs against the government's version of events. Motivated to keep Roehr out of trouble, Krista provided evasive and untruthful answers during the search, initially denying he was present in the trailer when he was standing behind her. She did not want the officers to enter, and she did not want them to search his backpack. The Court finds it highly unlikely that she gave verbal consent to entry and volunteered the backpack. Contrary to the government's argument that the Court should discredit everything Krista said because she demonstrated a capacity for dishonesty, the Court determines that Krista more likely than not refused consent to enter the trailer and to take and search the backpack.

After considering the evidence presented at the three hearings on this matter, the Court finds that Krista Junkert did not give consent to enter the residence and to retrieve the backpack. Thus, it concludes that the preponderance of the evidence does not support the government's theory. Because the evidence discovered in the backpack is directly tied to the warrantless and unconstitutional search of the Junkerts' residence, this evidence must be suppressed.

Accordingly, IT IS ORDERED that Defendant Jeremy Roehr's Motion to Suppress Evidence (Doc. 16) is GRANTED IN PART and DENIED IN PART. The motion is granted as to evidence discovered during the search of the black backpack found in the Junkert residence and denied as to evidence discovered during the search of Roehr's vehicle.

DATED this 29th day of November, 2018.

Dana L. Christensen, Chief Judge
United States District Court